237640. Thank you, your honors. My name is Chase Mechanic. I'm representing the City of New York. The District Court profoundly disturbed the status quo in this case by relying on an untested and mistaken construction of the State and City Right to Record Acts to enjoin all law enforcement officers in the City from enforcing a policy that prohibits filming in police precincts. This Court administered the following actions to the District Court. We administratively stayed the order four months ago. Merit's briefing is underway, and we request that the panel continue to stay pending the appeal for three basic reasons. First, enjoining the policy is going to result in irreparable public safety consequences that cannot be remediated even if the City prevails in this appeal. Second, while Plaintiff may prefer to go into a precinct and record now rather than later, he hasn't explained why that inconvenience would constitute an irreparable harm. And finally, because the District Court's decision to wade into novel questions of State law led it to misconstrue the Right to Report Acts. And I'd like to begin by focusing on the relative balance of hardships, the irreparable harm to us and to the City's residents if the preliminary injunction is restored, and the lack of irreparable harm to the Plaintiff if it is not. And I think it's important to underscore that these precincts are designed to be secure spaces. This is where victims and witnesses of crimes, including sex crimes, domestic violence survivors, juveniles, witnesses to gang violence, come to interact with the department. Confidential informants come to register or to further interact with the department. This is all in the record, and it was credited by the District Court. As the District Court noted, if these individuals are filmed, it has the potential to compromise their safety. And there are downstream public safety consequences because, again, as the District Court found and credited, it could chill crime reporting and it could deter individuals from registering or participating as confidential informants. Does the department have regulations specifically with regard to filming of those individuals? Not to my knowledge, and it's not in the record. Does the department have regulations with regard to filming within precinct houses? Well, the policy applies to all NYPD facilities. Well, okay, as to that, but how about the immediate vicinity thereof? Do you mean like the outside? Yeah. No, not to my knowledge. And I think that there would be constitutional questions about recording outside on sidewalks. However, for purposes of this motion, the plaintiff hasn't challenged in their opposition memorandum the District Court's conclusion that recording inside the non-public or limited public form of the interior of a precinct does not violate. Are all areas of the precinct building subject to the concern of uncompromising? I can appreciate the concern about compromising sources and other matters, but are all areas of the precinct buildings present those concerns? Certainly the lobbies do, and certainly, of course, the non-public areas do. Well, obviously the non-public areas do. But what I think it's important to understand is that each lobby, the physical layout is different. That's in the record. And the injunction that the plaintiff has asked for and that the District Court granted applies to all precincts in the city. So certainly there are some precincts where that's going to be a risk. There are 77 precincts in the city. Nobody's- So if a more narrow injunction had been granted, that is to certain designated precincts or certain designated places, would you have less of an objection? Well, I think that would have had to be something aired out before the District Court. I think that narrowing the injunction at this point, when we're not able to reopen and explore the record and explore the logistical issues in terms of identifying precincts where those concerns may be less or more elevated, that would have been a task for the District Court. And it may be a consideration for the merits panel in terms of deciding what to do. But I think that for purposes of this motion, we have to deal with the injunction that's before us, which was- Are we not authorized or empowered to narrow the injunction so that it only involves Reyes? I won't tell the court that you're not empowered to do so, but I think that would, again, present logistical challenges in terms of identifying when Reyes wants to record, training officers to accommodate him when he wants to record, logistical challenges that would have properly been before the District Court. But I don't necessarily think that we have a record before us that would allow this court to consider all of those challenges. I also think that- Well, no. I guess what I'm asking is if we were to only partially affirm and say that insofar as it applies to Reyes, then we'll affirm, but insofar as it's a broader injunction that applies to people in his position as a journalist, why can't we do that? And you mentioned these logistical challenges. What are the logistical challenges relating to that as a disposition? In terms of not every officer in the city will be able to recognize Reyes necessarily, but I'd also like to address that Reyes is not entitled to an injunction even individually. Wherever Reyes goes, we can't control what precinct he seeks to go into. He hasn't identified certain precincts that he wants to go back to. He says he wants to go back into NYPT's precincts generally. That could be any of them. And wherever he goes, there is a risk of irreparable harm based on the District Court's factual findings  Furthermore, in order to demonstrate his entitlement to this extraordinary remedy, Reyes would have to show something more than that he wants to engage in something that can't be done without a preliminary injunction. Simply wanting to engage in recording now rather than waiting until the litigation is finished is not enough. Thank you very much. Thank you. Mr. Cabanas, any questions? No, thank you. Mr. Case. May it please the Court, Andrew Case from Latino Justice, Pearl Def for plaintiff Sean Paul Reyes. At the District Court hearing on the preliminary injunction, Sean Paul Reyes testified about his specific plans to go to precincts and, quote, continue my investigation of the NYPD by recording himself and others filing complaints at the NYPD public window. He can't do this because if he does, he will be arrested. That's why the harm is actual and imminent. The harm cannot be remedied by money damages because the harm, when you lose the right to record the police, is the actual recording of that moment in time that will never come again. And you cannot get back. If Darnella Frazier had been arrested when she started to record the George Floyd murder, she would have had a claim for money damages, but she would have been irreparably harmed because the video the world needed to see would not exist. And you never know when you're going to have a video the world needs to see. So that's irreparable harm. On likelihood of success, the city, for the first time, on a stay motion of a preliminary injunction raises a new argument that is entirely foreclosed by binding authority from the New York State Court of Appeals. The scope to which a government entity can regulate property that is held open to the public by using the trespass laws was decided by the Court of Appeals in 1984 in People v. Leonard, 62 New York 2nd 411 1984 Court of Appeals. That's the case where Sunni Binghamton put out a persona non grata letter saying that even though campus is open to the public generally, you can't come in. The Court of Appeals said this is illegal, and it said, quote, a decision to exclude that is predicated on or impermissibly inhibits a constitutionally or a statutorily protected activity will not be lawful. That's the Penn site 411. All of defendants' cases about the possible parade of horribles can be resolved by relying on the test in People v. Leonard. When the government holds property open to the public, then people cannot be ejected if they act in a manner consistent with the use of that property. So, yes, NYCHA owns apartment buildings, and if you trespass in the hallways of a NYCHA building, you can be arrested for trespass. The city is a landlord there. It's not held open to the public. And in People v. Reap and Haberman, when someone is in the public lobby of a precinct and they stomp up and down and demand to see someone who doesn't work there. All right, so we have a—technically, as you heard me tell the high school students, this is a public courtroom, and there are parts of this building, this courthouse, that are public. Yes. Now, when you first go up the stairs to 44 East Square, you'll see a little sign that says no recording here. Yes. I think maybe in the absence of a specific court order, you cannot record. It's part of a regulation. There's a federal regulation. It's part of a federal regulation. So you would agree that if there were some regulation, that would tip the balance in favor, frankly, of the city? So, for example, the city brings up recording in courts and state courts. In Civil Rights Law, Section 52 bars recording in state courts. And so then you have, well, which is the more specific law? It's a very simple analysis. And in that case, you wouldn't be able to record there, even though it's open to the public. Police precinct lobbies are open to the public for the public's business at all times, 24 hours a day. The city brought up supposed privacy concerns. This is part of the balance of equities argument. But the privacy concerns in a public precinct are very minimal. It's already been held in Tancredi v. Malfitano, 567 F SUP 506, 2008, that there is no expectation of privacy in the lobby of a police precinct. And all of the parade of horribles you heard about— That's a district court decision. That's a district court decision, and expectation of privacy is a Fourth Amendment term. But to the extent it colors the idea of how private these spaces are, then that's a case to look at. On the factual issue of adapting to privacy, at the hearing, Captain Leone was asked about people trying to go to precincts and seeking privacy. He said they have many other ways that people can contact the PD privately. Confidential informants have handlers they contact. There are separate facilities for people who are victims of sexual assault to go where they don't have to go to a precinct. And if, despite all that, someone walks up to the precinct window and says, I'd like to have some privacy here, when asked if they could accommodate that, Captain Leone said, quote, I'm sure we could. That's a 45. Does someone who's in the public lobby of the precinct house have the right to tell Mr. Reyes that they don't want to be recorded? If a civilian in the public lobby says, I would not like to be recorded here, that's not the force of law. That would require, that's just a politeness for Mr. Reyes. He probably would respect that, just as he would in the public street. What if he doesn't? If he doesn't, then the person can leave the precinct. Or the person can ask to go to a private part of the precinct. So Mr. Reyes has an unfettered right to record anyone he wishes to? No, Mr. Reyes has an unfettered right to record in the public lobby of the precinct that is open to the general public at all times generally. So a victim of a sex crime who's on her way to report a crime, and she's very concerned about her identity, tells him, I don't want you to record me. And he says, no, I'm going to record you. Is she stuck with that? Yeah, she has other places that she can go to the police. This came up at the hearing. No, no, no. The fact that she might have other places doesn't satisfy me. She's stuck with that. Well, it's- Is your answer. She's stuck with it the same way she's stuck with it on the sidewalk that you talked about before. Captain Leone said, I said at the hearing he was asked if someone standing on the sidewalk watching people go in, confidential informants, reporters of sex crimes, if they come in the front door of the precinct, can you stop them? And he said no. So all you're talking about there is the door. All right. May I just follow up very briefly on- oh, Judge Kabanis, you have a question? I have a simple question for counsel. Yes. You've mentioned the hearing. Can you tell us what kind of a hearing you had? Sure. And secondly, what further hearing would be required for the district court to consider? I can answer the first question. We're now hearing the district court reconsider. Well, hold on a second. The court in deputy, he is frozen. Yes, I see. Stop the clock. Okay. There we go. Thank you. Where was my- I heard what kind of hearing is there, and then I heard what kind of hearing in the future, and then I lost you. Okay. Go ahead. Okay, the hearing- Okay. You're free to interpret. So the hearing we had- Answer whatever question you'd like to answer. We had a hearing on the preliminary injunction motion at which Plaintiff Sean Paul Reyes testified and Captain Leone from the NYPD testified. There's a transcript of that hearing. That's where the evidence of irreparable harm comes in, and that's where the concessions by the pleadee about how they can accommodate the injunction, if it takes place, comes in. We had oral argument directly after the evidentiary hearing. And just to- Go ahead. Just two persons? Just two witnesses, yes. And we entered the video of the incident, another video as well. Great. Just one quick question. Yes. You heard my questions to the city about limiting the scope of the injunction to Mr. Reyes. Yes. So we think there are also prudential concerns there in terms of identifying him and so on, and this is not a nationwide injunction. It's just against one NYPD policy affecting the precinct lobbies, and we think that it would be almost easier for the NYPD to allow the policy than to identify Mr. Reyes each time. But if the NYPD thinks that that's- I don't have a legal argument for why the injunction shouldn't be limited. It's just prudential. Thank you so much. Thank you. We'll reserve the decision.